# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ———————————————— ) | |
| MARGARET ANN HUDERT, ET AL., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Civil Action No. 05-545 (RBW) |
| ) | |
| ALION SCIENCE & TECH. CORP., ) | |
| ET AL., ) | |
| ) | |
| Defendants, ) | |
| ) | |
| v. ) | |
| ) | |
| UNITED STATES OF AMERICA, ) | |
| ET AL., ) | |
| ) | |
| Third-Party Defendants. ) | |
| ———————————————— ) | |

## MEMORANDUM OPINION

On December 20, 2004, the plaintiffs filed this action in the Superior Court of the District

of Columbia for the alleged wrongful death of their husband and father, Joseph Hudert.  The

decedent died from injuries sustained on May 3, 2004, caused by a steam and water burst that

occurred at the construction site where he was employed.  First Amended Complaint ( "Am.

Compl.") ¶¶ 16, 21.  The plaintiffs filed this action against defendants Grunley-Walsh Joint

Venture LLC ("Grunley-Walsh") and Alion Science & Technology Corp. ("Alion"), alleging that

their negligence caused the decedent's fatal injuries.  In turn, Grunley-Walsh has filed a third-

party complaint against the United States, the General Services Administration ("GSA") and

Cherry Hill Construction, Inc. ("Cherry Hill") seeking indemnification and contribution for their

negligence which allegedly caused the decedent's death.  Third-Party Complaint ("Third-Party

Compl.") ¶ 16. Subsequently, the third-party government defendants removed the case to this Court, and on April 20, 2005, the plaintiffs filed an amended complaint in this Court which added M&M Welding & Fabricators, Inc. ("M&M") and the District of Columbia Water and Sewer Authority ("DCWASA") as defendants for their allegedly negligent conduct relating to the decedent's fatal injuries.  All four of the defendants sued by the plaintiffs, Grunley-Walsh, Alion, M&M and the DCWASA, have filed cross-claims against each other for indemnification or contribution.  Alion has also filed a third-party complaint against Cherry Hill for indemnification and contribution.  All of these parties have filed answers to the claims lodged against them, with the exception of the United States and the GSA.  Rather, the GSA filed a motion to dismiss for lack of subject matter jurisdiction, which was addressed in a separate Order.  And in this opinion, the Court will consider the merits of Third Party Defendant United States of America's Motion to Dismiss, or in the Alternative, for Summary Judgment ("Def.'s Mot.") made pursuant to Rules 12(b)(1), 12(b)(6), and 56(c) of the Federal Rules of Civil Procedure.[1]  For the reasons set forth below, the United States' motion is denied in part and granted in part.

## I.   Background

The plaintiffs in this case are Margaret Hudert, Elizabeth Hudert, and Anthony Hudert, who are all seeking to recover damages for the death of Joseph Hudert.  Margaret Hudert was the decedent's wife, and is now the personal representative of his estate.  Am. Compl. ¶¶ 25-26.

---

[1] Also before the Court are Third Party Defendant United States' Memorandum in Support of Motion to Dismiss or, in the Alternative, for Summary Judge ("United States' Mem."), Third Party Defendant United States of America's Statement of Material Facts Not in Dispute ("United States' Stmt."), the Opposition of Third-Party Plaintiff Grunley-Walsh Joint Venture, LLC to the Motion to Dismiss or for Summary Judgment ("Grunley-Walsh's Opp'n"), third-party plaintiff Grunley Walsh's Statement of Material Facts in Dispute Which Defeat Summary Judgment, third-party plaintiff Grunley Walsh's Memorandum of Points and Authorities in Support of the Opposition to the Motion to Dismiss or for Summary Judgment ("Grunley-Walsh's Mem."), and the United States' Reply in Support of Motion to Dismiss Third Party Defendant United States of America.

Elizabeth Hudert is the daughter of the decedent, id. ¶¶ 29-30, and Anthony Hudert is the

decedent's minor son.  Id. ¶¶ 31-32.  As noted above, on April 23, 2004, the decedent sustained

fatal burns at a construction site at or near 808 17th Street, NW, Washington D.C.  Id. ¶ 16.  At

the time of the accident, the decedent was working as an employee of Cherry Hill.  Id. ¶ 15.  The

decedent died from his injuries on May 2, 2004.  Id. ¶ 17.

Third-party plaintiff Grunley-Walsh had hired Cherry Hill as a subcontractor to assist

with work required by a construction contract it had entered into with the GSA.  United States'

Stmt. at 5.  The GSA contract was for the replacement of  high pressure steam and condensate

lines under 17th Street N.W., Washington D.C.  United States' Mem., Exhibit ("Ex.") 1 at 8

(Technical Specification for Project to Replace 17th Street Condensate Line).  Work related to

this contract was occurring during the early morning of April 23, 2004, when the release of steam

and condensate water caused the injuries that ultimately resulted in the death of the decedent and

Grunley-Walsh Construction Superintendent Frank Stotmeister who were both in or near

manhole 11 on 17th Street at the time of the release. United States' Stmt. at 8-9.  Consequently,

the GSA launched an accident investigation to determine what had caused the release of the

steam.  Grunley-Walsh's Mem. at 3.  The GSA Accident Review Board interviewed witnesses,

reviewed safety procedures for the project, examined photographs and visited the accident site to

determine the cause of the accident. Grunley-Walsh's Opp'n, Ex. 1 at 7 (Accident Investigation

Report).  According to the report issued by the Accident Review Board, the project task for the

night of April 22-23, 2005, was to install a new steam line.  Id. at 10.  That night, after

DCWASA had shut off the water to the existing line, the Cherry Hill crew cut into the line so

that they could connect the new line to the existing system.  Id. at 9-10.  When they did so,

3

residual water in the isolated pipe segment drained out and came into contact with other uninsulated steam lines under 17th Street.  Id. at 10.  Although Cherry Hill had set up pumps to remove this residual water, it nonetheless came into contact with the hot uninsulated pipes resulting in the creation of large amounts of steam.  Id.  This caused the lines around the work site to violently vibrate or "hammer."  Id.  This hammering also affected lines in the nearby New Executive Office Building ("NEOB") where water and steam began to collect in a mechanical room.  Id.  GSA plumbers responded to the NEOB and closed another isolation valve on the steam lines in order to replace a gasket damaged by the hammering.  Id. at 11.  At one point, the hammering in the NEOB "was so violent that the GSA Service Center Plumbing Shop personnel fled the mechanical room."  Id.

Eventually, the steam and hammering was contained in the NEOB and Cherry Hill was able to complete the installation of the new line on 17th Street.  Id.  After repairs were made at the NEOB, GSA plumbers opened an isolation valve connected to the steam station.  Id. at 14.  The DCWASA inspected the newly installed line on the outside of the NEOB and approved Cherry Hill's work.  Id. at 11.  Somewhere between 7:30 a.m. and 8:00 a.m. on April 23, 2005, a GSA plumber closed an isolation valve between the NEOB and manhole 11 on 17th Street in preparation for the steam valve in manhole 11 being reopened.  Id. at 12.  At approximately 8:51 a.m., before the DCWASA released the water into the 17th street line, "there was a massive release of steam and condensate water."  Id.  It is suspected that a slug of condensate was pushed by a high velocity burst of steam and caused welding on a valve inside the manhole to fail.  Id. at 15.  At the time this failure occurred, a large amount of steam and water were released.  Id.  "Mr. Hudert was standing on [a] ladder inside the manhole [and] the [burst] of water and steam

ejected him out of the manhole into the air [causing him to fall onto] the roadway.  Mr.

Stotmeister either was [also] pushed out of the manhole by the erupting steam and water or

climbed out [and rolled] away from the hole."  Id. at 12.

Although the entire "Findings and Recommendations" section of the Accident Review

Board's report is conspicuously redacted, the conclusion section states that the Board found that

the accident had been caused by Grunley-Walsh's failure to comply with the project's safety

procedures.  Id. at 27.  Specifically, the Accident Review Board determined that Grunley-Walsh

had failed to comply with safety precautions contained in the terms and protocols of its contract

and communicated to it orally, which required Grunley-Walsh to request that the GSA shut down

and drain the lines from which the steam and water were released before the valve in manhole 11

was opened.  Id.  The Board based this conclusion, in part, on the inference that because the

steam valve in manhole 11 was found open after the accident, Mr. Stotmeister, a Grunley-Walsh

employee,  must have opened it minutes before the accident occurred.  Id. at 15.

## II.   Arguments

In the motion now before the Court, the United States seeks dismissal of the complaint as

related to it for three reasons: (1) lack of subject matter jurisdiction pursuant to Federal Rule of

Civil Procedure 12(b)(1); (2) failure to state a viable claim pursuant to Federal Rule of Civil

Procedure 12(b)(6); and, (3) because it is undisputed that an employee of Grunley-Walsh violated

the contract between Grunley-Walsh and the United States, summary judgment in the United

States' favor is warranted under Federal Rule of Civil Procedure 56.  As grounds for its Rule

12(b)(1) motion, the United States opines that it is immune from liability in this tort action

because of its sovereign status.  United States' Mem. at 6.  The government acknowledges that

"by its own terms, the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 1346(b) (2000), waives [its] sovereign immunity . . . ," but it stresses that this waiver only encompasses "claims resulting from the negligent conduct or wrongful omissions of federal agencies or 'employees of the government,'" not government contractors.  United States' Mem. at 6-7 (citations omitted).  And the government contends that Mr. Stotmeister, acting as a Superintendent for Grunley-Walsh (a government contractor), caused the event that resulted in the decedent's death.  Id. at 9.  Thus, in the government's opinion, because the alleged tort occurred as a result of a contractor's actions, the FTCA's waiver provisions do not apply and it therefore cannot be held liable in this action.  Id. at 6-8.  In support of its Rule 12(b)(6) motion, the government opines that the contract between the GSA and Grunley-Walsh expressly bars recovery from the government for any tortuous conduct committed by Grunley-Walsh.  Id. at 12-13.  Therefore, the government concludes that "[b]ased on this indemnity clause, Grunley-Walsh fails to State a claim for indemnification."  Id. at 13.  And, the government argues that it is entitled to summary judgment "[b]ecause it is undisputed that a Grunley-Walsh employee, and not any employee of the United States, turned the lines on—which was in violation of the contract . . . ."  Id. at 17.

Grunley-Walsh opposes the government's motion in all respects.  Specifically, Grunley-Walsh takes exception with the United States' claim of sovereign immunity, arguing that its claim against the United States specifically alleges negligence on the part of the GSA, which it contends contributed to the steam and water release that caused the decedent's death.  Grunley-Walsh's Mem. at 5.  Grunley-Walsh further argues that because the GSA is a federal agency, this Court clearly has subject matter jurisdiction as a result of the FTCA's waiver of sovereign immunity.  Id. at 6.  And although Grunley-Walsh submits that a Rule 12(b)(6) dismissal is

inappropriate, it does not directly provide support for this position, instead conflating its dissent

with its summary judgment analysis.  See id. at 6-8.  With respect to its summary judgment

request, Grunley-Walsh argues first that the relief requested is inappropriate because it has not

had an opportunity to conduct discovery.  Id. at 7-8.  Additionally, Grunley-Walsh argues that

there are genuine issues of material fact in dispute concerning the government's liability.[2]  Id. at

4.  It points specifically to the GSA's own Accident Review Board's report which indicates that

on the day of the accident, the GSA's own plumbers worked on steam lines directly effected by

the hammering in the 17th Street steam lines that caused the decedent's injuries.  Id. at 3-4.

Grunley-Walsh relies on this information to demonstrate that, contrary to the government's

position, "material issues of fact concerning who was at fault and whose acts or omissions

resulted in the injuries and loss" remain in dispute.  Id. at 8.  Finally, although Grunley-Walsh

acknowledges the United States' position that the parties' contract bars any claim against the

United States for indemnification, it does not directly address in detail the government's position

on this point.  See id. at 6-7.

### III.  Legal Standard

**A.  Fed. R. Civ. P. 12(b)(1)**

A motion for dismissal under "Rule 12(b)(1) [of the Federal Rules of Civil Procedure]

presents a threshold challenge to the court's jurisdiction . . . ."  Haase v. Sessions, 835 F.2d 902,

---

[2]  In a previous Order in this case, the Court dismissed the GSA as a party partly because "[t]he authority of any federal agency to sue and be sued in its own name shall not be construed to authorize suits against such federal agency on claims which are cognizable under section 1346(b) of [the FTCA]."  See Order dated March 22, 2006.  This distinction limits the FTCA's waiver of sovereign immunity to the United States and prohibits suits against governmental agencies such as the GSA.  However, this dismissal, which was based primarily on a technical pleading requirement, is not dispositive of whether the government can be found liable in this case based on the conduct of the GSA employees, as the United States has waived its immunity for the tortious actions of its agents and agencies.  Therefore, GSA's conduct remains central to Grunley-Walsh's claims against the government.

906 (D.C. Cir. 1987) (citations omitted).  Specifically, Rule 12(b)(1) permits dismissal of a

complaint if the court "lack[s] jurisdiction over the subject matter." Fed. R. Civ. P. 12(b)(1).

The "[p]laintiff bears the burden of proving subject matter jurisdiction by a preponderance of the

evidence." Amer. Farm Bureau v. EPA, 121 F. Supp. 2d 84, 90 (D.D.C. 2000).  This rule also

imposes "an affirmative obligation [on the Court] to ensure that it is acting within the scope of its

jurisdictional authority . . . [and for this] reason, the '[p]laintiff's factual allegations in the

complaint . . . will bear closer scrutiny in resolving a 12(b)(1) motion' than on a 12(b)(6) motion

for failure to state a claim." Fowler v. D.C., 122 F. Supp. 2d 37, 40 (D.D.C. 2000) (citations

omitted).  This Court is therefore permitted to rely on documents beyond the pleadings to assure

that it has jurisdiction.  See Land v. Dollar, 330 U.S. 731, 735 n.4 (1947); Haase, 835 F.2d at

901; Artis v. Greenspan, 223 F. Supp. 2d 149, 152 (D.D.C. 2002).  And by considering

documents outside the pleadings to resolve a challenge to the Court's subject matter jurisdiction,

the Court does not convert the motion into one for summary judgment; "the plain language of

Rule 12(b) permits only a 12(b)(6) motion to be converted into a motion for summary judgment."

Haase, 835 F.2d at 905 (emphasis in original).  However, just because the Court has the power to

go beyond the pleadings, it remains "settled law [that] the District Court may in appropriate cases

dispose of a motion to dismiss for lack of subject matter jurisdiction under Fed. R. Civ. P

12(b)(1) on the complaint standing alone." Herbert v. Nat'l Acad. of Scis, 974 F.2d 192, 197

(D.C. Cir. 1992).

**B.  Summary Judgment**

Pursuant to Rule 56(c), "judgment [upon request] shall be rendered forthwith if the

pleadings, depositions, answers to interrogatories, and admissions on file, together with the

affidavits, if any, show that there is no genuine issue as to any material fact and that the moving

party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  Avoidance of summary

judgment requires the existence of an alleged factual dispute that is properly supported by the

record.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986).  "As to materiality, the

substantive law will identify which facts are material."  Id.  In order for the plaintiff to survive a

defendant's motion for summary judgment, she or he need not demonstrate that there is an issue

in dispute that will be resolved in her or his favor; "rather, all that is required is that sufficient

evidence supporting the claimed factual dispute be shown to require a jury or judge to resolve the

parties' differing versions of the truth at trial."  Id. at 249 (quoting First Nat'l Bank of Ariz. v.

Cities Serv. Co., 391 U.S. 253, 288-289 (1968)).

## IV.    Discussion

### A.  Subject Matter Jurisdiction

This negligence action was removed to this Court from the Superior Court of the District

of Columbia.  Removal from a state level court to a federal court is proper only if the district

court has original jurisdiction.  28 U.S.C. § 1441(a) (2000).  Because the third-party complaint is

an action against the United States, it is important to note that while federal courts have original

jurisdiction to hear claims against the United States, subject matter jurisdiction to sue the United

States only exists when the United States has waived its sovereign immunity.  United States v.

Orleans, 425 U.S. 807, 814 (1976).  Waivers of the United States' sovereign immunity must be

express and unequivocal.  West v. Gibson, 527 U.S. 212, 228 (1999).  Here, Grunley-Walsh

argues that this Court has subject matter jurisdiction over its claims against the government

pursuant to an express waiver made by Congress in the FTCA.  Third-Party Compl. ¶ 1.  The

FTCA confers upon

> the district courts . . . exclusive jurisdiction of civil actions on claims against the
> United States . . . for injury or loss of property, or personal injury or death caused by
> the negligent or wrongful act or omission of any employee of the Government while
> acting within the scope of his office or employment, under circumstances where the
> United States, if a private person, would be liable to the claimant in accordance with
> the law of the place where the act or omission occurred.

28 U.S.C. 1346(b)(1).  The Supreme Court has held that this language in "[t]he [FTCA] is a

limited waiver of sovereign immunity, making the federal government liable to the same extent

as a private party for certain torts of federal employees acting within the scope of their

employment."  Orleans, 425 U.S. at 813.  The FTCA defines federal employees to include

"officers or employees of any federal agency"  28 U.S.C. § 2671.  "[T]he term 'Federal agency'

includes the executive departments, the judicial and legislative branches, the military

departments, independent establishments of the United States, and corporations primarily acting

as instrumentalities or agencies of the United States, but does not include any contractor with the

United States."  Id.  Moreover, the Supreme Court has interpreted the language of the FTCA "to

mean . . . that the United States waives sovereign immunity 'under circumstances' where local

law would make a 'private person' liable in tort."  United States v. Olson, ___ U.S. ___, ___, 126

S. Ct. 510, 511 (2005) (emphasis added).  Thus, the question for this Court to resolve is whether

Grunley-Walsh has asserted a claim against the United States that would be the basis for finding

tort liability in the District of Columbia against a private individual.  See id.

Contingent upon Grunley-Walsh being found liable under the Huderts' Amended

Complaint, Grunley-Walsh in turn seeks recovery from the United States on two theories of

third-party liability: indemnification and contribution.  Third-Party Compl. ¶ 16.  Both of these

theories of liability are tort doctrines, Restatement (Third) of Torts §§ 22-23 (2000), Fowler v.

Harper, Fleming James, Jr., Oscar S. Gray, The Law of Torts § 10 (1986, 2d ed.), and are

actionable under the FTCA if they would be actionable against a private individual under

applicable state law, Lockheed Aircraft Corp. v. United States, 460 U.S. 190, 198 (1983) ("The

[FTCA] permits an indemnity action against the United States . . . ."); United States v. Yellow

Cab Co., 340 U.S. 543, 548 (1951) (holding that through the FTCA, the government consented to

be sued for contribution as a third-party defendant).  The substantive law that governs in an

FTCA action is that of the state where the act or omission occurred.  28 U.S.C. § 1346(b)(1);

accord Richards v. United States, 369 U.S. 1, 9 (1962) ("[w]here the negligence and the injury

normally occur simultaneously and in a single jurisdiction, the law to be applied is clear, and no

solution to the meaning of the words 'the law of the place where the act or omission occurred' is

required.").  Here, as all the acts and omissions alleged in Grunley-Walsh's third-party complaint

occurred in the District of Columbia, as did the injuries sustained by the decedent and the events

that allegedly caused them, it is the substantive law of the District of Columbia that this Court

must apply.  See id.

Whether this Court has subject matter jurisdiction in this case turns on the nature of the

two theories upon which Grunley-Walsh seeks a finding of liability against the United States.

Indemnification and contribution are two distinct legal doctrines: indemnification involves the

shifting of responsibility, whereas contribution involves the sharing of responsibility.  See D.C.

Transit Sys. Inc. v. Slingland, 266 F.2d 465, 469-470 (D.C. Cir. 1959).  Under District of

Columbia law "'[q]uestions of indemnity pose legal issues that are resolved by the court rather

than the jury.'"  Hubbard v. Chidel, 790 A.2d 558, 567 (D.C. 2002) (quoting D.C. v. Murtaugh,

728 A.2d 1237, 1244 (D.C. 1999).  "A duty to indemnify may arise from an express contract

provision or, in the absence of a contract, where indemnification is required to prevent injustice."

Quadrangle Dev. Corp. v. Otis Elevator Co., 748 A.2d 432, 435 (D.C. 2000) (citations omitted).

In general, indemnification has been characterized by the District of Columbia as "a shifting of

responsibility from the shoulders of one person to another . . . recognized in cases where equities

have supported it."  Id. at 435 (citing D.C. v. Washington Hosp. Ctr., 722 A.2d 332, 339 (D.C.

1998)).  Furthermore, "[t]he basis for indemnity is restitution . . . [that] shift[s] the entire loss

[resulting from liability to the indemnitor to prevent] unjust[] enrich[ment] at the indemnitee's

expense . . . ."  Id. (citations and quotations omitted).  Indemnification is an equitable principle

that becomes applicable only "where the indemnitee's conduct was not as blameworthy as that of

the indemnitor."  Id.  When "joint tort-feasors are [both] guilty of active negligence and their

negligence concurs in causing the injury, none is entitled to indemnity against the others but there

may be contribution among them.'"  Hubbard, 790 A.2d at 568-69 (quoting Early Settlers Ins. Co.

v. Schweid, 221 A.2d 920, 923 (D.C. 1966)); accord Otis Elevator, 748 A.2d at 435 (citations

omitted).  On the other hand, "[c]ontribution is one of several theories used to apportion damages

among tortfeasors to an injured party."  Hubbard, 790 A.2d at 569.  In general, contribution is the

right of joint tort-feasors to collect from one another so that the plaintiff's losses are equitably

shared by all wrongdoers.  Id.  The remedy of contribution among joint tort-feasors is part of

District of Columbia common law, and it assigns equal responsibility among all joint tort-feasors

irrespective of their relative degrees of fault.  Id.  District of Columbia law recognizes that

several acts can combine to cause an injury, thus independent acts that combine to cause a single

injury can establish joint tort-feasor status and grounds for contribution.  Id. at 570.

With respect to its motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), the United States has, in part, misconstrued the nature of Grunley-Walsh's complaint. The United States first argues that because the FTCA expressly forbids a finding of liability against it for the actions of a contractor, the third-party complaint fails to confer subject matter jurisdiction to this Court over Grunley-Walsh's claims because there has been no waiver of the United States' sovereign immunity. United States' Mot. at 1. While this is true for Grunley-Walsh's indemnity claim, which seeks to shift all liability to the United States, including negligence that may have resulted from Grunley-Walsh's own conduct, that is not true with respect to the contribution claim, wherein Grunley-Walsh seeks to recover only that portion of the damages resulting from the United States' (GSA's) employees' conduct. See 28 U.S.C. §§ 1346(b), 2671 (precluding any shift of liability resulting from the conduct of a contractor to the United States); Washington Hosp. Ctr., 722 A.2d at 336-40 (explaining that one difference between contribution and indemnification is that contribution seeks to allocate liability whereas indemnity generally seeks to shift all liability). In other words, the FTCA does not authorize the United States to assume liability for the acts of its contractors, which would be the consequence of indemnification liability, but it does waive the United States' immunity from suit resulting from the acts of its employees and agencies, which would be the consequence of contribution liability. And here, Grunley-Walsh points to the GSA's actions identified in the GSA accident report which allegedly indicates that the GSA played an active role in the events that contributed to the event which caused the decedent's death. Grunley-Walsh's Opp'n at 2; see also Grunley-Walsh's Opp'n, Ex. 1 at 14 (Accident Investigation Report). Therefore, this alleged active negligence, if proven by Grunley-Walsh, would be sufficient to support its claim for contribution

under District of Columbia law.  See Hubbard, 790 A.2d at 569-70.  Indeed, "[a]n essential

prerequisite for entitlement to contribution is that the parties be joint tortfeasors in the sense that

their negligence concurred in causing harm to the injured party."  Id.  Accordingly, because

Grunley-Walsh has asserted a proper tort claim of contribution based on the alleged negligent

acts or omissions of a federal agency's employees, the United States has waived its sovereign

immunity through the FTCA with respect to these allegations and, thus, this Court has subject

matter jurisdiction in this case.  Yellow Cab Co., 340 U.S. at 551; see United States v. Olson,

126 S. Ct. 510, 511 (2005); 28 U.S.C. §§ 1346(b), 2671.

However, the indemnification claim cannot be sustained.  As noted already, the third-

party complaint alleges that negligent acts and omissions by GSA employees contributed to the

decedent's death.  Third-Party Compl. ¶¶ 10, 14.  This purported conduct was distinct and

independent from that of Grunley-Walsh, but nevertheless allegedly contributed to the decedent's

death.  Accordingly, the indemnification claim cannot be sustained because if the GSA's conduct

is found to be negligent along with Grunley-Walsh's, both will be considered active joint tort-

feasors and Grunley-Walsh will be precluded from seeking indemnification from the United

States under District of Columbia law.  Hubbard, 790 A.2d at 568-69.  Consequently, without a

valid cause of action for indemnification under District of Columbia law, the FTCA does not

confer subject matter jurisdiction to this Court over the indemnification claim.  28 U.S.C. §

1346(b)(1).  In other words, this Court lacks jurisdiction over the indemnity claim because by its

nature it seeks to shift all liability to the United States, even that of its contractor (Grunley-

Walsh), which is expressly barred by the FTCA.  28 U.S.C. §§ 1346(b), 2671.  Thus, the Court

lacks subject matter jurisdiction to hear Grunley-Walsh's indemnity claim.  Accordingly, the

United States' Rule 12(b)(1) motion is granted with respect to the indemnity claim but denied with respect to Grunley-Walsh's contribution claim.[3]

## B.  Summary Judgment

The United States also seeks summary judgment in its favor pursuant to Rule 56(c) of the Federal Rules of Civil Procedure.  As noted above, in order for the Court to grant summary judgment there must be no genuine issues of material fact in dispute.  Fed. R. Civ. P. 56(c). However, Rule 56(f) affords the Court the ability to delay reaching the merits of a Rule 56(c) motion.  Specifically, under Rule 56(f) "the court may refuse the application for judgment" as premature if based on "the affidavits of a party opposing the motion [it is shown] that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition . . . ." Fed. R. Civ. P. 56(f).  In other words, if there has been insufficient discovery conducted in a case at the time a summary judgment motion is filed, the Court can deny the motion as premature. Consistent with Rule 56(f), the District of Columbia Circuit has stated that courts should normally provide for "a reasonable opportunity to complete discovery before grappling with a summary judgment motion . . . ."  Martin v. Malhoyt, 830 F.2d 237, 256 (D.C. Cir. 1987) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 325-327 (1986).  Indeed, "[t]he court has long recognized that a party opposing summary judgment needs a 'reasonable opportunity' to complete discovery before responding to a summary judgment motion and that 'insufficient time or opportunity to engage in discovery' is cause to defer decision on the motion."  Khan v. Parsons Global Servs.,

---

[3]  The government also argues that the indemnification claim should be dismissed under Rule 12(b)(6) because it is barred by the indemnity clause of the contract between the GSA and Grunley-Walsh.  United States' Mem. at 12-13.  It is unnecessary for the Court to address this issue because it has concluded that it is without subject matter jurisdiction over the indemnification claim.

Ltd., 428 F.3d 1079, 1087 (D.C. Cir. 2005) (citations omitted). Moreover, the need for the Court

to allow additional discovery time pursuant to Rule 56(f) motion seems particularly great in

negligence actions where facts essential to a negligence claim are exclusively in the possession of

the moving party. Ward v. United States, 471 F.2d 667, 670 (3d Cir. 1973) (granting additional

discovery of facts relevant to the alleged negligence as a matter of course under Rule 56(f)); see

also Gregory Lumber Co. v. United States, 9 Cl. Ct. 503 (1986) (favoring a liberal construction

of Rule 56(f), the court permitted additional discovery of negligence issues on the basis of justice

and fundamental fairness); cf. Magee v. Coastal Towing, Inc., No. Civ. A. 02-2789, 2003 WL

22038385 (E.D. La. Aug. 25, 2003) (granting summary judgment in a negligence action only

after the plaintiff received four Rule 56(f) continuances). However, Rule 56(f) can be used by

the Court to postpone reaching the merits of a summary judgment motion, the party seeking to

invoke the rule must satisfy two perquisites: (1) the party must submit an affidavit with its

opposition, and (2) the affidavit must explain why the party was unable to offer material facts in

opposition to the motion. See Londrigan v. FBI, 670 F.2d 1164, 1175 (D.C. Cir. 1981). The

explanation contained within the affidavit, however, cannot be conclusory in nature, rather it

must "demonstrat[e] the necessity and utility of the discovery" sought by the party opposing

summary judgment. Strang v. United States Arms Control and Disarmament Agency, 864 F.2d

859, 861 (D.C. Cir. 1989). Ultimately, the Court has great discretion in ruling on requests for

additional discovery under Rule 56(f), just as it does when addressing most discovery issues. See

Paquin v. Fed. Nat'l Mortgage Ass'n, 119 F.3d 23, 28 (D.C. Cir. 1997); Nixon v. Freeman, 670

F.2d 346, 365 (D.C. Cir. 1982).

Here, Grunley-Walsh submitted the affidavit of its counsel, James Jordan, with its

opposition.  Grunley-Walsh Opp'n, Ex. 3 (Jordan Affidavit).  Contained therein, Jordan states

that when the government filed its motion no formal discovery had taken place.  Moreover,

Jordan contends that additional discovery is necessary for Grunley-Walsh to defend against the

summary judgment motion because it needs to further develop the inference that the government

"failed to properly maintain and/or inspect the drip leg plate weld," which contributed to the

accident as already reflected in the Accident Investigation Report.  Id. Ex. 3 at 2.  This is a

reasonable request because discovering evidence that will support this inference may prove

useful in establishing negligence on the part of the GSA employees.  Thus, this evidence, if

discovered, would at a minimum place the government's conduct in dispute—the minimum

standard necessary to survive summary judgment.  Fed. R. Civ. P. 56(c).  Grunley-Walsh has

therefore satisfied the prerequisites of Rule 56(f) necessary for the Court defer a ruling on the

United States motion for summary judgment.  Accordingly, the Court will deny the motion

without prejudice.  See Strang, 864 F.2d at 861.

## V.    Conclusion

For the foregoing reasons, only Grunley-Walsh's contribution claim survives the United

States' motion.  Whether this claim will ultimately survive a renewed summary judgment motion

once an adequate opportunity for discovery is provided will be determined later.  Accordingly,

the United States' motion pursuant to 12(b)(1) is denied as to Grunley-Walsh's contribution

claim but granted as to its indemnification claim.  In addition, the United States' summary

judgment motion is denied without prejudice.

SO ORDERED this 18th day of April 2006.[4]

REGGIE B. WALTON
United States District Judge

---

[4]An Amended Order is being issued with this Memorandum Opinion.